IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| KYUNG H. HAN, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 120291C |
| | ) | |
| v. | ) | |
| | ) | |
| CLACKAMAS COUNTY ASSESSOR, | ) | |
| | ) | |
| Defendant. | ) | **DECISION** |

Plaintiff has timely appealed from an Order of the Clackamas County Board of Property

Tax Appeals (BOPTA), dated March 13, 2012, requesting a reduction in the real market value

(RMV) of property identified in the assessor's records as Account 00811900 (subject property)

for the 2011-12 tax year. Trial was held in the courtroom of the Oregon Tax Court, Salem,

Oregon, on November 6, 2012. John Taylor (Taylor), Oregon licensed real estate broker,

appeared and testified on behalf of Plaintiff. David Sohm (Sohm), Registered Appraiser,

Clackamas County Department of Assessment and Taxation, appeared and testified on behalf of

Defendant.

Plaintiff's Exhibit 1 and Defendant's Exhibits A and B were admitted at trial. The court

sustained Defendant's objection to the admission of Plaintiff's Exhibit 2 on the grounds of

hearsay and lack of authentication. Plaintiff's Exhibit 2 was an appraisal report (Brown

appraisal) prepared by an MAI (member of the Appraisal Institute) appraiser, Aaron Brown

(Brown). Brown was not present or made available to testify about the report, thus depriving

Defendant the opportunity to cross-examine Brown about his data selection and thought process

in arriving at his estimated "as-is" value opinion.

/ / /

## I.    STATEMENT OF FACTS

The RMV on the assessment and tax rolls, as sustained by BOPTA, is $2,499,826, with $523,076 allocated to the land and $1,976,750 allocated to the improvements (excluding personal property).  (Ptf's Compl at 3.)  Plaintiff requests a reduction to $1,951,000 (rounded).  (Ptf's Ex 1 at 3.)  Defendant requests the court sustain the RMV on the rolls ($2,499,826) based on Sohm's value estimate of $2,500,000 (rounded).  (*Id.*; Def's Ex A at 33.)

The subject property is a 64-room hotel built in 1992 and currently known as the Guesthouse Inn & Suites.[1]  (Ptf's Ex 1 at 4; Def's Ex A at 2, 5.)  It is located on a one and one-half acre parcel of land in Wilsonville, Oregon.  (Ptf's Ex 1 at 4.)  Wilsonville "has become the headquarters for several major regional and national companies with a strong high tech cluster of advanced imaging and design firms, including Xerox and Mentor Graphics."  (Def's Ex A at 5.)  According to Sohm's testimony and appraisal report, those industries and other nearby industrial and office parks (including the Oregon Institute of Technology, Sysco Food Services, Fry's Electronics and a Rite Aid Distribution Center) "contribute significantly to room demand in Wilsonville."  (*Id.*)

The subject property is a limited service hotel located in a "commercial node adjacent to the east side of the [Interstate 5] Freeway among office and motel development in the northeast quadrant of the Wilsonville interchange."  (*Id.*)  Interstate 5 is "the main north-South traffic arterial through Oregon leading to Portland and Seattle on the north and other western Oregon cities and California on the south."  (*Id.* at 6.)  The uncontroverted evidence is that there are

---

[1] Sohm refers to the property throughout his appraisal as a "motel," while Taylor describes it as a "hotel." Based on the physical description of the property and the commonly accepted distinction between the two, the court finds that the property is best described as a hotel because guests access rooms by interior hallways rather than using exterior doors.  According to *Webster's Third New Int'l Dictionary* 1474, 1095 (unabridged ed 2002), a motel is "an establishment which provides lodging and parking and in which the rooms are usu[ally] accessible from an outdoor parking area," while a hotel is an establishment that usually has "a large open street-level lobby," that "provide[s] lodging and usu[ally] meals, entertainment, and various personal services for the public."

"[m]ore than a dozen sit down and fast food restaurants * * * located [in the area of the subject property], along with a community shopping center." (*Id.* at 5.)

Plaintiff purchased the subject property for $1,875,000 at a trustee sale in November 2010 and obtained possession shortly thereafter. (Ptf's Ex 1 at 5.) This sale occurred less than two months prior to the assessment date of January 1, 2011. (*See id.* at 4-5.)

The hotel is of "modern design with interior hallways, and an indoor pool, spa, exercise room, breakfast room, high-speed Internet, 24-hour business center, and a guest laundry. (*Id.* at 5.) The computer center is equipped with "computer, copy, and fax services." (*Id.* at 6.) The parties agree that the highest and best use of the property with existing improvement is as a hotel. (*Id.*; Ptf's Ex 1 at 4.)

The parties agree there are problems with the subject property, but differ in their opinions on the nature and effect thereof. Sohm testified that while the property suffered from three significant problems: a foreclosure, a change in the franchise (referred to by Sohm throughout the trial as a change in the "flag"), and construction on the freeway interchange used by would-be guests accessing the hotel from I-5, the primary reason for the subject's low income in 2011 was poor management. Taylor, on the other hand, testified that the hotel's main problem is its poor location stemming from the property's lack of visibility to motorists on I-5.

In estimating the tax year 2011-12 RMV of the subject property, Taylor testified he considered, but rejected, the sales comparison approach, choosing instead to rely solely on the income approach. Sohm testified he utilized both the sales comparison approach and the income approach, but placed the most weight on the sales comparison approach. Neither party relied on the cost approach. Taylor concluded a RMV estimate of $1,951,000. (Ptf's Ex 1 at 3, 24.) Sohm concluded a RMV estimate of $2,500,000. (Def's Ex A at 33.)

Looking first at Plaintiff's evidence, Taylor testified that he considered both the sales comparison approach and income approach, but rejected the former of the two as unreliable. For his income approach, Taylor utilized both the direct capitalization and the gross income multiplier (GIM) methods. The gross income multiplier is "the relationship or ratio between the sale price or value of the property and its gross income from rent and other income sources." (Ptf's Ex 1 at 15 (quoting Appraisal Institute, *The Appraisal of Real Estate* 546 (12th ed 2001[2])).) Taylor testified that the gross income multiplier approach was not given much weight but that it did support his direct capitalization approach. For his direct capitalization approach, Taylor testified that he used four sales from the excluded Brown appraisal, four sales from Sohm's appraisal, plus one additional sale of a 63 room hotel in Vancouver Washington that sold in October 2012. (Ptf's Ex 1 at 9, 21.) Taylor testified that the comparables from the Brown appraisal were used because of the similarity in the incomes of those properties compared to the subject. Taylor further testified that if an income of another property is similar to the subject, then it can be used as a comparable, regardless of differences such as location, property type, and number of rooms. Taylor used a capitalization rate (cap rate) slightly above the 10.25 average derived from his nine sales because of the additional risk factors impacting the subject property. (Ptf's Ex 1 at 22-23.) Taylor settled on a cap rate of 10.5 percent. (*Id*. at 23.) Taylor estimated net operating income (NOI) of $208,000 using an average daily room rate (ADR) of $59 (multiplied by the number of rooms times the number of days in the year), and an occupancy rate of 40 percent (plus $6,000 "other income"), for an effective gross income (EGI) of $557,000 (rounded). (*Id.* at 20.) Taylor then subtracted $349,000 for expenses. (*Id*.) Taylor testified that the actual NOI of the subject in 2011 was $118,000. Using the 10.5 percent cap rate and an NOI

---

[2] Taylor cited the 12th edition of the *Appraisal of Real Estate*, the court will refer to the 13th edition.

of $208,000, Taylor concluded the value of the subject, less personal property, was $1,951,000. (*Id.* at 24.)

For the GIM method, Taylor used the same nine comparables used in the direct capitalization method; Taylor found the average GIM to be 3.64, and, based on his appraisal judgment, used a GIM for the subject of 3.5. (*Id.* at 16-17.) Multiplying the effective gross income of $557,000 by the 3.5 GIM, Taylor concluded with an indicated value under that approach of $1,949,500. (*Id.* at 17.) Taylor stated in his report that "[t]he [effective gross income multiplier (EGIM)] approach is helpful as a check but no weight is placed on it." (*Id*. at 24.)

In estimating the 2011-12 RMV for the subject property, Sohm testified that he used both the sales comparison approach and the income approach, but put the most weight on the former. For the sales comparison approach, Sohm used four comparable sales to determine a price per room of $40,500, after adjustments, which resulted in an indicated value of $2,592,000 for the 64-room subject. (Def Ex A at 26.) For his income capitalization approach, Sohm used an ADR of $68, and an occupancy rate of 55 percent, for revenue per available room of $37.40 per day multiplied by the number of rooms and annualized, to arrive at what amounts to potential gross income of $873,664. (*Id*. at 28-30) Sohm's NOI is $298,650 after expenses. (*Id*. at 31.) Sohm then applied a loaded cap rate of 12.28 percent (10.7 percent base rate plus 1.58 percent tax rate), arriving at an indicated value of $2,432,003. (*Id.* at 32.) The 10.7 percent cap rate was derived from the four comparable sales used by Sohm with the most weight being placed on Sale 1 and Sale 2. (*Id.* at 16-19; 32.) Sohm deducted $36,247 for personal property to arrive at a final value of $2,396,000 (rounded). (*Id.* at 32.) Sohm placed greater weight on the sales comparison approach and concluded with a value estimate of $2,500,000 as of January 1, 2011. (*Id.* at 33.)

## II.  ANALYSIS

The issue before the court is the tax year 2011-12 RMV of the subject property.  "Real market value is the standard used throughout the ad valorem statutes except for special assessments."  *Richardson v. Clackamas County Assessor*, TC-MD No 020869D, WL 21263620 at *2 (Mar 26, 2003) (citing *Gangle v. Dept. of Rev.*, 13 OTR 343, 345 (1995)).

RMV is defined in the applicable statute as:

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

ORS 308.205(1).[3]

"Real market value in all cases shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue."  ORS 308.205(2).  The Department's rule provides for the valuation of all real property based on the consideration of the three standard approaches to valuation.  OAR 150-308.205-(A)(2)(a).  These approaches are the sales comparison approach, the cost approach, and the income capitalization approach.  *Id.*; *see also* Appraisal Institute, *The Appraisal of Real Estate* 130 (13th ed 2008).  The rule requires that all of the approaches be considered, but not that all approaches be used.  OAR 150-308.205-(A)(2)(a).

"In all proceedings before the judge or a magistrate of the tax court, * * * a preponderance of the evidence shall suffice to sustain the burden of proof.  The burden of proof shall fall upon the party seeking affirmative relief * * *."  ORS 305.427.  This court has held "[p]reponderance of the evidence means the greater weight of evidence, the more convincing

---

[3] The court's references to the Oregon Revised Statues (ORS) are to 2009, references to the Oregon Administrative Rules (OAR) are to the current edition.

evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971) (citation omitted). Furthermore, the evidence provided must be competent evidence of the requested RMV of a property in order for a party to sustain the burden of proof. *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002); *Reed v. Dept. of Rev.* (*Reed*), 310 Or 260, 265, 798 P2d 235 (1990). "Competent evidence includes appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, and testimony from licensed professionals such as appraisers, real estate agents, and licensed brokers." *Danielson v. Multnomah County Assessor*, TC-MD No 110300D, WL 879285 (Mar 13, 2012). Evidence that is inconclusive or unpersuasive is insufficient to sustain the burden of proof. *Reed*, 310 Or at 265 (1990).

Plaintiff's evidence in support of its requested RMV reduction is inconclusive and unpersuasive. Plaintiff's only support in favor of a reduction of RMV was Taylor's income capitalization theory, which operates to "convert a single year's income *expectancy* into a value indication." *Confehr v. Multnomah County Assessor*, TC-MD No 110621D, WL 659199 at *8 (Feb 27, 2012) (quoting Appraisal Institute, *The Appraisal of Real Estate* 499 (13th ed 2008) (emphasis added)). "Direct capitalization is widely used when properties are already operating on a stabilized basis * * *. The methodology may be less useful for properties * * * when income or expenses are expected to change in an irregular pattern over time." Appraisal Institute, *The Appraisal of Real Estate* 499 (13th ed 2008). Taylor testified that the subject's actual 2011 income was approximately $118,000, but he selected a NOI of $208,000 acknowledging the subject was not operating on a stabilized basis. (Ptf's Ex 1 at 21.) The subject's lack of income stability is further supported by a lack of historical income statements, the abrupt change in franchise flag, the construction of the Wilsonville interchange, and a late 2010 foreclosure sale.

The court is not persuaded by Taylor's testimony and evidence pertaining to his $208,000 NOI. That effectively undermines Plaintiff's value approach, which relied primarily on the income capitalization approach, and in turn undermines Plaintiff's appeal. There are other problems with Plaintiff's income capitalization approach. Taylor testified that the comparable sales he used to derive his capitalization rate were chosen based solely on the similarities of income to the subject and not on typical characteristics used when determining comparable property. *See* Appraisal Institute, *The Appraisal of Real Estate* 503-04 (13th ed 2008) ("[d]ata must be drawn from properties that are physically similar to the property being appraised * * *. Sale properties used as sources for calculating overall capitalization rates should have current and future market expectations * * * comparable to those affecting the subject property.") Taylor made no effort to independently verify income from any of his comparable sales, but instead completely relied on numbers provided in the excluded Brown appraisal. Finally, Taylor failed to load the cap rate based on the property tax in accordance with OAR 150-308.205(G), choosing instead to include taxes in his expenses in arriving at NOI. Plaintiff failed to present the court with "competent evidence" of the RMV of the subject property as of January 1, 2011, and thus has not met its burden of proof.

### III. CONCLUSION

After careful consideration of the testimony and evidence, the court concludes that Plaintiff has failed to meet his statutory burden of proof and that, as a result, the subject property's tax year 2011-12 total real market value should remain undisturbed at $2,499,826. Now, therefore,

/ / /

/ / /

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied and the real market value of the subject property, identified as Account 00811900 for tax year 2011-12, is sustained at $2,499,826.

Dated this ____ day of December 2012.

_____
DAN ROBINSON
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This Decision was signed by Magistrate Dan Robinson on December 18, 2012. The Court filed and entered this Decision on December 18, 2012.*